1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11   MOSETTE M. KNIGHT,

12                                     NO. CIV. 07-1691 WBS EFB
             Plaintiff,
13                                     _____
        v.                            MEMORANDUM AND ORDER RE:
14                                     MOTIONS TO DISMISS AND STRIKE

15   STANDARD INSURANCE COMPANY,

16           Defendant.

17

18

19                          ----oo0oo----

20        Plaintiff Mosette M. Knight filed this action after

21   defendant Standard Insurance Company denied her claim for long-

22   term disability benefits.  Defendant now moves to dismiss

23   plaintiff's Complaint for failure to state a claim upon which

24   relief can be granted and to strike plaintiff's demand for a jury

25   trial.

26   I.   Factual and Procedural Background

27        In 1992, defendant issued the Far Northern

28   Coordinating Council on Mental Retardation and Developmental

                              1

Disabilities Long Term Disability Plan ("LTD Plan") to plaintiff's employer, Far Northern Regional Center ("Far Northern"). (First Am. Compl. ¶ 5; Compl. ¶ 4.) On May 1, 2005, plaintiff submitted a long-term disability claim to defendant. (First Am. Compl. ¶¶ 7-8.) Defendant approved plaintiff's claim on May 12, 2005 and informed plaintiff that she would be eligible for benefits only until August 30, 2005. (Id. at ¶¶ 8-9.)

After an unsuccessful internal appeal and administrative review of defendant's post-August 30, 2005 denial of benefits, plaintiff filed this action. (Id. at ¶¶ 10-12.) In her Complaint, plaintiff alleged claims under the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. §§ 1001-1461. In her First Amended Complaint, however, plaintiff abandoned her ERISA claims in lieu of state law claims for breach of contract and breach of the covenant of good faith and fair dealing. Defendant now moves to dismiss plaintiff's state law claims as preempted by ERISA and to strike plaintiff's demand for a jury trial.

II. Discussion

   A.   Motion to Dismiss

      1.   Legal Standard and Consideration of Extrinsic Materials

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff needs to

2

1    plead "only enough facts to state a claim to relief that is

2    plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct.

3    1955, 1974 (2007).  Dismissal is appropriate, however, where the

4    plaintiff fails to state a claim supportable by a cognizable

5    legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696,

6    699 (9th Cir. 1990); <u>see also</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47

7    (1957), <u>abrogated on other grounds by</u> <u>Twombly</u>, 127 S. Ct. at 1968

8    (complaint must "give the defendant fair notice of what the

9    plaintiff's claim is and the grounds upon which it rests").

10   "However, the court is not required to accept legal conclusions

11   cast in the form of factual allegations if those conclusions

12   cannot reasonably be drawn from the facts alleged." <u>Clegg v.

13   Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994).

14         When ruling on a motion to dismiss, the court generally

15   may not consider materials other than the facts alleged in the

16   complaint and documents that are made a part of the complaint.

17   <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996); <u>Branch v.

18   Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994), <u>overruled on other

19   grounds by</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th

20   Cir. 2002).  A court may, however, consider materials if (1) the

21   authenticity of the materials is not disputed and (2) the

22   plaintiff has alleged the existence of the materials in the

23   complaint or the complaint "necessarily relies" on the materials.

24   <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001)

25   (citation omitted); <u>Branch</u>, 14 F.3d at 454.  The court may also

26   take judicial notice of undisputed facts that are contained in

27   extrinsic materials.  <u>Mir v. Little Co. of Mary Hosp.</u>, 844 F.2d

28   646, 649 (9th Cir. 1988); <u>Lee</u>, 250 F.3d at 689-90.

                                    3

1          Defendant requests this court to take judicial notice

2    of Far Northern's ERISA Form 5500, which Far Northern filed with

3    the U.S. Department of Labor (DOL), (Def.'s Req. for Judicial

4    Notice Ex. A), and Far Northern's Articles of Incorporation,

5    which Far Northern filed with the California Secretary of State.[1]

6    (Def.'s Second Req. for Judicial Notice Ex. A.)  The court will

7    take judicial notice of these materials.  Fed. R. Evid. 201(b);

8    see also Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282

9    (9th Cir. 1986), abrogated on other grounds by Astoria Fed. Sav.

10   & Loan Ass'n v. Solimino, 501 U.S. 104 (1991) ("[A] court may

11   take judicial notice of 'records and reports of administrative

12   bodies.'") (citations omitted).[2]

13   _____

14       [1]   The court will consider the Articles of Incorporation
     in lieu of a copy of a webpage from the California Secretary of
15   State website identifying Far Northern as a corporation, which
     defendant included in its first request for judicial notice.
16   (Def.'s Req. for Judicial Notice Ex. B.)

17       [2]   Defendant has also provided the court with a copy of
     the May 19, 2005 Standard Insurance Long Term Disability Benefits
18   Employer's Statement ("Employer's Statement"), which was
     completed by Far Northern.  (Def.'s Mem. in Support of Mot. to
19   Dismiss Ex. A.)  Defendant requests the court to consider the
     Employer's Statement for the sole fact that, in the form, Far
20   Northern identifies itself as a "private-sector employer."  While
     plaintiff alleges that she submitted a claim to defendant (First
21   Am. Compl. ¶ 8), her complaint does not allege the existence of
     the Employer's Statement or any form that Far Northern submitted
22   to defendant.  Plaintiff's complaint also cannot be said to
     "necessarily rely on" the Employer's Statement because it is not
23   a "document[] governing plan membership, coverage, and
     administration" of the LTD Plan.  Parrino v. FHP, Inc., 146 F.3d
24   699, 706 (9th Cir. 1998), superceded by statute on other grounds
     as recognized in Abrego Abrego v. The Dow Chem. Co., 443 F.3d
25   676, 681 (9th Cir. 2006) (emphasis added).  The court, therefore,
     cannot consider the document in deciding defendant's motion to
26   dismiss.
              In addition, plaintiff has provided the court with
27   copies of webpages from the California State Public Employees'
     Retirement System ("CalPERS") and Far Northern's websites.  "It
28   is not uncommon for courts to take judicial notice of factual

                                    4

1              2.  <u>ERISA Governmental Plan Exception</u>

2          "'ERISA contains one of the broadest preemption clauses

3  ever enacted by Congress.'  The ERISA provisions 'supersede any

4  and all State laws insofar as they may now or hereafter relate to

5  any employee benefit plan . . . .'"  <u>Greany v. W. Farm Bureau</u>

6  <u>Life Ins. Co.</u>, 973 F.2d 812, 817 (9th Cir. 1992) (quoting  <u>PM</u>

7  <u>Group Life Ins. v. W. Growers Assurance Trust</u>, 953 F.2d 543, 545

8  (9th Cir. 1992); 29 U.S.C. § 1441(a)).  "In particular, ERISA

9  preempts state law causes of action that offer remedies for the

10 violation of rights expressly guaranteed by ERISA and exclusively

11 enforced by ERISA's civil enforcement mechanism."  <u>Tingey v.</u>

12 <u>Pixley-Richards W., Inc.</u>, 953 F.2d 1124, 1130 (9th Cir. 1992)

13 (citations omitted).

14         As a "narrow exception" to ERISA's broad and exclusive

15

16 information found on the world wide web."  <u>O'Toole v. Northrop</u>
   <u>Grumman Corp.</u>, 499 F.3d 1218, 1225 (10th Cir. 2007) (citations
17 omitted); <u>see, e.g.</u>, <u>Lund v. Leprino Foods Co.</u>, No. 06-431, 2007
   WL 1775474, at *1 n.3 (E.D. Cal. June 20, 2007) (citing cases
18 from the Southern and Northern Districts of California).  Taking
   judicial notice of facts on a webpage, however, poses heightened
19 concerns because anyone can say anything on a webpage, and the
   posting of a "fact" on a webpage does not necessarily make it
20 true.  <u>See</u> <u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 237 (3d Cir.
   2007) ("[Because] a company's website is a marketing tool . . .
21 courts should be wary of finding judicially noticeable facts
   amongst all the fluff [on a webpage].");  <u>Quan v. Gonzales</u>, 428
22 F.3d 883, 891 n.1 (9th Cir. 2005) (O'Scannlain, J., dissenting)
   (criticizing the "majority's reliance on a website of unknown
23 reliability").  The unregulated content of webpages poses
   significant hurdles for the court to find that a webpage, or its
24 host or author, is necessarily "a source whose accuracy cannot
   reasonably be questioned."  <u>See</u> Fed. R. Evid. 201(b)(2) ("A
25 judicially noticed fact must be one not subject to reasonable
   dispute in that it is . . . (2) capable of accurate and ready
26 determination by resort to sources whose accuracy cannot
   reasonably be questioned.").  While certain webpages will
27 undoubtedly satisfy Rule 201(b)(2), the court need not embark on
   this inquiry because taking judicial notice of the aforementioned
28 webpages will not affect this court's analysis or ruling.

                                   5

coverage, "governmental plans" are exempt from ERISA.  <u>Silvera v.</u>
<u>Mutual Life Ins. Co. of N.Y.</u>, 884 F.2d 423, 425 (9th Cir. 1989);
29 U.S.C. § 1003(b)(1).  ERISA defines a "governmental plan" as a
"plan established or maintained for its employees by . . . the
government of any State or political subdivision thereof, <u>or by</u>
<u>any agency or instrumentality of any of the foregoing</u>."  29
U.S.C. § 1002(32) (emphasis added).  ERISA does not, therefore,
preempt plaintiff's state law claims if (1) Far Northern
qualifies as an "agency" or "instrumentality" of the state and
(2) Far Northern "established or maintained" the LTD Plan.[3]

     Neither ERISA nor federal case law provide a precise
definition of "agency" or "instrumentality" for purposes of
ERISA's governmental plan exception.  <u>See</u> Op. Dep't Labor 97-05A,
1997 WL 75230 (Feb. 12, 1997) ("The terms 'agency' and
'instrumentality' are not defined in ERISA; nor are there any
regulations under ERISA that interpret those terms.").

     To determine whether the governmental plan exception
applies, the Ninth Circuit, district courts in this circuit, and

---

     [3]   "Evidence of the establishment of a plan" exists if
the government employer (1) made contributions to the plan; (2)
established that participation in the plan was not voluntary for
employees; or (3) endorsed the plan or had greater involvement
than simply "permit[ting] the insurer to publicize the program to
employees or members, [collecting] premiums through payroll
deductions," and remitting them to the insurer.  <u>Silvera</u>, 884
F.2d at 426.  Defendant does not dispute that Far Northern
"established or maintained" the LTD Plan.  <u>Cf.</u> <u>id.</u> at 425-26
("'Congress, in exempting governmental plans, was concerned more
with the governmental nature of public employees and public
employers than with the details of how a plan was established or
maintained.'" (quoting <u>Rose v. Long Island R.R. Pension Plan</u>, 828
F.2d 910, 920 (2d Cir. 1987))).

the DOL[4] have engaged in fact-intensive evaluations of the entity

and plan's relationships with the state government.  See, e.g.,

Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1006-07 (9th

Cir. 1998); Hanson v. United Life Ins. Co., 170 F. Supp. 2d 966,

973 (C.D. Cal. 2001); Kendall v. Standard Ins. Co., 17 F. Supp.

2d 1128, 1131 (E.D. Cal. 1998).

        Although no factor is dispositive, to determine whether

the governmental plan exception applies, courts and the DOL have

considered whether (1) the state exercised control over the plan,

Bast, 150 F.3d at 1006; (2) the plan provides for only employer

or employee contributions or for both, id.; Op. Dep't Labor 97-

05A, 1997 WL 75230; (3) government employees acted as fiduciaries

under the plan, Bast, 150 F.3d at 1006; (4) the state created the

entity, Kendall, 17 F. Supp. 2d at 1132 (citing Shannon v.

Shannon, 965 F.2d 542, 546-48 (7th Cir. 1992)); (5) the entity is

"administered by individuals who are responsible to public

officials or to the general electorate," id.; (6) the state

exercises authority over the entity, Hanson, 170 F. Supp. 2d at

974; (7) the entity performs traditional government functions,

id.; (8) the entity's employees are considered government

employees under federal and state employment laws, Op. Dep't

Labor 97-05A, 1997 WL 75230; and (9) the entity is funded by

---

    [4]    DOL ERISA opinion letters are entitled to substantial
weight because the DOL is an agency that administers portions of
ERISA.  See Bance v. Alaska Carpenters Ret. Plan, 829 F.2d 820,
827 (9th Cir. 1987); Williams v. Wright, 927 F.2d 1540, 1545
(11th Cir. 1991) (though not binding, DOL ERISA opinion letters
"carry considerable weight").

state taxes or bonds.[5]  <u>Kendall</u>, 17 F. Supp. 2d at 1131-32.

Far Northern is a regional center created pursuant to the Lanterman Developmental Disabilities Services Act ("Lanterman Act"), which is California's "comprehensive statutory scheme [that] provide[s] services for developmentally disabled individuals."  62 Op. Cal. Att'y Gen. 229 (1979).  Section 4620 of the Lanterman Act provides:

> In order for the state to carry out many of its responsibilities as established in [the Lanterman Act], the state shall contract with appropriate agencies to provide fixed points of contact in the community for persons with developmental disabilities and their families . . . . The Legislature finds that the service provided to individuals and their families by regional centers is of such a special and unique nature that it cannot be satisfactorily provided by state agencies. Therefore, **private nonprofit community agencies** shall be **utilized by the state** for the purpose of operating regional centers.

Cal. Welf. & Inst. Code § 4620(a)-(b) (emphasis added).

_____

[5]      Similarly, to determine whether the governmental plan exception applies, the Second Circuit examines the six factors enumerated in the Internal Revenue Ruling that defines "instrumentality" for purposes of the Internal Revenue Code: (1) whether it is used for a governmental purpose and performs a governmental function; (2) whether performance of its function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the organization is vested in public authority or authorities; (5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and (6) the degree of financial autonomy and the source of its operating expenses. <u>Rose v. Long Island R.R. Pension Plan</u>, 828 F.2d 910, 918 (2d Cir. 1987) (discussing Revenue Ruling 57-128, 1957 WL 11279 (1957)). <u>But see</u> <u>Alley v. Resolution Trust Corp.</u>, 984 F.2d 1201, 1206 n.11 (D.C. Cir. 1993) (declining to apply the above six factors and, instead, focusing "on what should be the core concern for ERISA purposes--the nature of an entity's relationship to and governance of its employees").

1    The Lanterman Act also establishes a statutorily-
2 prescribed relationship between regional centers and the state.
3 Specifically, the regional centers are accountable to and
4 monitored by the California Legislature, id. § 4501, the state
5 planning council, id. § 4540, area boards, id. § 4570, and the
6 California Department of Developmental Services ("Department").
7 Id. §§ 4629(e), 4631, 4635, 4685; see also 62 Op. Cal. Att'y Gen.
8 229 (1979) (discussing the limits of the Department's control
9 over regional centers).  Regional centers are also subject to
10 extensive statutory regulations controlling their day-to-day
11 operations.  See, e.g., Cal. Welf. & Inst. Code §§ 4640.6-.8,
12 4641, 4642, 4643.3, 4647, 4648, 4648.1-.2, 4650.

13    Certain California statutes also treat regional center
14 employees as public employees.  For example, a regional center
15 employee is immune from civil suits for damages resulting from
16 the employee's non-negligent act or omission.  Id. § 4519.7.  For
17 purposes of CalPERS, section 20057(k) of the California
18 Government Code also defines "public agency" to include regional
19 centers established pursuant to the Lanterman Act.  Cal. Gov't
20 Code § 20057(k).

21    The state also funds regional centers.  Cal. Welf. &
22 Inst. Code § 4629(a).  It is unclear at this point, however,
23 whether the regional centers are directly funded by taxes or
24 government bonds or whether they receive funds through contracts
25 with other government agencies.  See Cal. Welf. & Inst. Code §
26 4629(a) ("The state shall enter into five-year contracts with
27 regional centers, subject to the annual appropriation of funds by
28 the Legislature."); see also Kendall v. Standard Ins. Co., 17 F.

1  Supp. 2d 1128, 1131 (E.D. Cal. 1998) (emphasizing that the entity
2  "raises its revenues from government agencies pursuant to
3  contracts, not from taxes or bonds").

4          On the other hand, Far Northen is incorporated as a
5  nonprofit corporation, (Def.'s Second Req. for Judicial Notice
6  Ex. A), and it files a non-governmental ERISA form with the DOL.
7  (Def.'s Req. for Judicial Notice Ex. A.)

8          Overall, in light of the evidence presently before the
9  court, the last six factors suggest Far Northern may constitute
10 an agency or instrumentality of the state while other facts
11 suggest it may not.  The lack of evidence regarding the first
12 through third factors and the fifth factor highlight the court's
13 inability to resolve such a fact-dependant issue before
14 discovery.  See Hydrick v. Hunter, 500 F.3d 978, 1000 (9th Cir.
15 2007) (recognizing that "[s]uch a fact specific inquiry [could]
16 hardly be taken" in a motion to dismiss).

17         Accordingly, because it is plausible that Far Northern
18 constitutes an agency or instrumentality of the state, thereby
19 falling within the governmental plan exception to ERISA
20 preemption, at this stage of the proceedings the court must deny
21 defendant's motion to dismiss plaintiff's state law claims.
22 However, in order to save the parties from incurring unnecessary
23 expenses in discovery in the event that it is eventually
24 determined that plaintiff's state law claims are preempted by
25 ERISA, the court will limit discovery for a reasonable period of
26 time only to the issue of whether the governmental plan exception
27 applies.
28 ///

10

1   B.   <u>Motion to Strike</u>

2         "Upon a motion made by a party . . . the court may

3   order stricken from any pleading any insufficient defense or any

4   redundant, immaterial, impertinent, or scandalous matter."  Fed.

5   R. Civ. P. 12(f).  A "motion to strike is appropriate to address

6   requested relief . . . which is not recoverable as a matter of

7   law."  <u>Wilkerson v. Butler</u>, 229 F.R.D. 166, 172 (E.D. Cal. 2005).

8   When ruling on a motion to strike, the court must view the

9   challenged pleadings in the light most favorable to the pleader.

10  <u>See</u> <u>Pillsbury, Madison & Sutro v. Lerner</u>, 31 F.3d 924, 928 (9th

11  Cir. 1994).

12        Defendant's sole argument in support of its motion to

13  strike is that plaintiff is not entitled to a jury trial under

14  ERISA.  <u>See</u> <u>Thomas v. Or. Fruit Prods. Co.</u>, 228 F.3d 991, 997

15  (9th Cir. 2000) ("[T]he remedies available to a participant or

16  beneficiary under ERISA are equitable in nature and the Seventh

17  Amendment does not require that a jury trial be afforded for

18  claims made by participants or beneficiaries.").  Because the

19  court will not dismiss plaintiff's state law claims, plaintiff

20  may be entitled to a jury trial.  Accordingly, the court must

21  deny defendant's motion to strike plaintiff's demand for a jury

22  trial.

23        IT IS THEREFORE ORDERED that defendant's motion to

24  dismiss plaintiff's state law claims be, and the same hereby is,

25  DENIED and defendant's motion to strike plaintiff's demand for a

26  jury trial be, and the same hereby is, DENIED.

27        IT IS FURTHER ORDERED that during the ninety days

28  immediately following this order discovery shall be limited to

11

1  the issue of whether the governmental plan exception applies.  If

2  defendant moves for summary judgment on the issue of ERISA

3  preemption within that ninety day period, no discovery on any

4  other issues in the case shall be initiated until the court rules

5  on the motion.

6  DATED:  February 5, 2008

7

8  _____

   WILLIAM B. SHUBB

9  UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12